Faden, Appellant, *v.* Philadelphia Housing Authority.

274

Argued January 4, 1966. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Ethel S. Barenbaum,* with her *Herman M. Baren-baum,* and *Barenbaum & Barenbaum,* for appellant.

*Joseph Mistrano,* with him *George E. Peterson,* for authority, appellee.

*Jerome R. Balka,* and *Balka and Balka,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, January 6, 1967:

This is an appeal from the action of the court below sustaining preliminary objections of appellee, the Philadelphia Housing Authority and dismissing the complaint.

Appellant, Ruth M. Faden, brought suit in her capacity as a taxpayer of the City of Philadelphia against the Philadelphia Housing Authority, seeking to set aside a contract between the Authority and H. Gold, Inc., a contractor, and for such other relief as would be just and equitable. The gravamen of her complaint was that the contract in question, which was for the replacement and conversion of coal-fired boilers at an Authority housing project, had not been awarded to the lowest responsible bidder as mandated by the Housing Authorities Law, Act of May 28, 1937, P. L. 955, §11, as amended, 35 P.S. §1551.

The Authority filed preliminary objections to the complaint, alleging, inter alia, that a taxpayer lacked standing to challenge Authority action since no tax funds were directly involved. The objections were sustained on this ground and the complaint dismissed. This appeal followed.

Approximately three months subsequent to the filing of the appeal the Authority moved this Court to dismiss the appeal under Supreme Court Rule 41, on the ground that the controlling question had become moot. In support of its motion, the Authority alleged that all work to be performed under the contract had been completed,[1] thus dissolving the controversy and

---

[1] The papers filed by appellees do not make clear whether their mootness claim is based solely on the averment that the contractor has completed his work or whether the mootness claim is also

precluding equity from granting the requested relief.

In her answer to this motion, appellant asserted that she was without sufficient knowledge or information to form a belief as to the truth of the Authority's allegations and that all means of proof thereof were in the exclusive control of the Authority. The allegations were therefore denied and proof demanded.

This Court is of the opinion that the motion to dismiss the appeal on the ground that the controlling question had become moot must be denied. Appellee has failed to support its allegations by depositions, as required by Supreme Court Rule 41[2] when such allegations are controverted. In these circumstances, it would be necessary to receive proof of the allegations

---

based on the claim that the Housing Authority has made payment and thus completed its performance under the contract.

All that appellee's motion to dismiss this appeal alleges with reference to completion of performance is: "5. Since the filing of the appeal the Appellee, H. Gold, Inc. has fully performed the said contract which appellant seeks to enjoin; and the conversion and replacement of the boilers at the aforesaid project from coal to gas fired has been accomplished. 6. As a result of the completion of performance of said contract an actual controversy in this case does not exist and the Court could not grant the Appellant the relief requested in her Complaint." While it is true that appellee's brief (filed subsequently to its motion to dismiss) contains the statement that: "All performance under the contract which Appellant seeks to enjoin has been completed." we feel the phrasing of this statement, without more, does not in the circumstances clearly enough suggest that appellee's mootness claim is based on payment by the Housing Authority.

[2] "At any time prior to that herein fixed for the filing and service of the Brief of appellee, he may move . . . to dismiss . . . because the controlling question has, for any reason, become moot. . . . A copy of the motions, and papers attached thereto, shall be filed in this Court and served on the opposite party, who may reply within five days after service thereof. Matters averred in either motion or answer, which do not appear of record, must be sustained by an affidavit of the truth thereof, and, if controverted, must be supported by depositions."

contained in the Authority's motion before it can be ruled on, a task for which the court below is far better equipped than this Court.

More importantly, even assuming the correctness of appellee's averment that the work on the furnaces has been completed, this does not moot this litigation. Appellant's prayer for relief in the court below did not seek only to restrain the defendant contractor from performing its duties under the contract, it also sought to restrain the defendant Philadelphia Housing Authority from performing its duties and in addition "such other and further relief as may be deemed just and reasonable." Thus it may be that appellant is still entitled to restrain the Housing Authority from making some part or all payment to the appellee-contractor, cf. *Yoder v. Luzerne Township School District*, 399 Pa. 425, 160 A. 2d 419 (1960); *Philadelphia Co. v. Pittsburgh*, 253 Pa. 147, 97 Atl. 1083 (1916) or if payment has been made, that some other relief in the nature of restitution of moneys to the Housing Authority may be available to appellant. By saying this we in no way intimate any view as to the type of relief, if any, which could appropriately be granted by the court below in this case; all we do say is that, absent any argument by appellant showing why such further relief is not available, this Court cannot say that completion of performance renders this case moot.[3]

We turn, therefore, to the sole issue raised by this appeal: whether appellant, as a resident and taxpayer of the City and School District of Philadelphia, has standing to institute an action in equity against the Philadelphia Housing Authority.

---

[3] We are also precluded from mooting this appeal by the fact that it was the unilateral action of appellees that brought about the conditions upon which the mootness claim is based. A defendant to a suit in equity may not oust a Court's jurisdiction merely by performing an act sought to be enjoined.

This Court has recently struggled with the concept of standing as it affects the right of a taxpayer to maintain a suit against a public body. See, e.g., *Price v. Philadelphia Parking Authority,* 422 Pa. 317, 221 A. 2d 138 (1966); *White v. Philadelphia,* 408 Pa. 397, 184 A. 2d 266 (1962); *Loewen v. Shapiro,* 389 Pa. 610, 133 A. 2d 525 (1957). And although many reasons have been advanced for granting standing to taxpayers, the fundamental reason for granting standing is simply that otherwise a large body of governmental activity would be unchallengeable in the courts. Note, Taxpayers' Suits: A Survey and Summary, 69 Yale L.J. 895, 904 (1960). Moreover, it has been recognized that "the availability of such litigation is insurance against the instances in which responsible prosecutors, usually political officers, are themselves allied with the action challenged or are overly burdened to identify and rectify every . . . illegal practice." Id. at 911; see also Jaffe, Standing To Secure Judicial Review: Public Actions, 74 Harv. L. Rev. 1265, 1280, 1282 (1961).

Yet the reasons for permitting taxpayer litigation involving nonauthority governmental bodies seem to be forgotten when applied to suits brought against public authorities. Rather than recognize the fact that public policy favors judicial review of the statutory and constitutional validity of the acts of public bodies and officials, courts too often require strict compliance with the traditional requirements, developed long before the advent of the public authorities, that the taxpayer establish a direct pecuniary loss. Merely because a governmental unit has chosen to perform its public functions through an authority rather than directly affords no basis for granting such an authority greater immunity from taxpayer challenge than the body which created the authority. Nor does a rule permitting taxpayers to challenge in court the conduct of public authorities create the possibility that public functions will

be unduly disrupted by the groundless legal challenges of isolated individuals. The courts' proven ability to deal effectively with such challenges to governmental bodies receiving direct tax support can just as easily be employed to protect public authorities receiving indirect tax support. Cf. *Schade v. Allegheny County Inst. Dist.*, 386 Pa. 507, 511, 126 A. 2d 911, 913 (1956).

This Court has recently recognized the need to subject the activities of public authorities to judicial scrutiny.[4] In *Price v. Philadelphia Parking Authority*, 422 Pa. 317, 329, 221 A. 2d 138, 145 (1966), the Court stated: "As public bodies, . . . [authorities] exercise public powers and must act strictly within their legislative mandates. Moreover, they stand in a fiduciary relationship to the public which they are created to serve and their conduct must be guided by good faith and sound judgment. See Schwartz v. Urban Redevelopment Auth., 411 Pa. 530, 536, 192 A. 2d 371, 374 (1963) ; Heilig Bros. Co. Inc. v. Kohler, 366 Pa. 72, 77-78, 76 A. 2d 613, 616 (1950). The mushrooming of authorities at all levels of government and the frequent complaint that such bodies act in an arbitrary and capricious manner in violation of existing law dictate that a check rein be kept upon them. Schwartz v. Urban Redevelopment Auth., 411 Pa. 530, 536, 192 A. 2d 371, 374 (1963) ; Keystone Raceway Corp. v. State Harness Racing Comm., 405 Pa. 1, 5, 173 A. 2d 97, 99 (1961). *These considerations dictate that the independence of authorities from some of the usual restrictions on governmental activity not be extended so as to insulate them from judicial scrutiny through the medium of taxpayers' suits.*" (Emphasis supplied; footnotes omitted.)

The authority in the instant case is "a public body, corporate and politic, exercising public powers of the

---

[4] Compare *Mayer v. Hemphill*, 411 Pa. 1, 190 A. 2d 444 (1963).

Commonwealth . . . ." Act of May 28, 1937, P. L. 955, §10, 35 P.S. §1550. Its property is exempt from most taxes. Ibid, §23, 35 P.S. §1563. To the extent that the activity of the Philadelphia Housing Authority creates tax exempt property, which benefits from the provision of municipal services it would seem that the taxpayer has a pecuniary interest in seeing that its functions are not improperly conducted. Cf. *Price v. Philadelphia Parking Auth.,* supra at 325-27, 221 A. 2d at 143-44. Moreover the Philadelphia Housing Authority is empowered to agree to make payment to the City of Philadelphia in lieu of taxes for "improvements, services, and facilities", so long as such payments do not exceed the cost thereof to the City, Act of May 28, 1937, P. L. 955, §23, 35 P.S. §1563, and that such an agreement has in fact been made. This fact emphasizes the taxpayers' interest in the operation of the Housing Authority, since the misuse of funds jeopardizes the Authority's ability to make the agreed upon payments "in lieu of taxes."

Appellees urge that *White v. Philadelphia,* 408 Pa. 397, 184 A. 2d 266 (1962), in which we rejected a taxpayer's claimed standing to enjoin the City, School District and Housing Authority of Philadelphia from enforcing an ordinance empowering the Authority to purchase and rehabilitate selected non-contiguous properties precludes us from finding standing here. We believe, however, that this Court's broadened philosophy of standing outlined a few months ago in *Price v. Philadelphia Parking Authority,* supra, supersedes *White* and that a denial of standing to appellant Faden here would be in conflict with the *Price* philosophy. We therefore overrule *White* insofar as it is inconsistent with the decision here.

Much the same reasoning we have used to deal with the appellees' reliance on *White* applies equally to their reliance on *Loewen v. Shapiro,* 389 Pa. 610, 133 A. 2d

525 (1957), although it should be noted that ground of the *Loewen* Court's denial of standing is somewhat distinguishable from those urged here, as is attested by the fact that the author of the *White* opinion dissented to that portion of *Loewen* dealing with standing.

Under these circumstances, we are compelled to conclude that the taxpayer in the present case has standing to challenge the action of the Philadelphia Housing Authority and that the chancellor erred in sustaining the preliminary objections of the Authority.

Decree of the court below dismissing the complaint is reversed and the record remanded for further proceedings consistent herewith. Each party pay own costs.

---

Concurring Opinion by Mr. Justice Jones:

As the majority opinion writer in *White v. Philadelphia*, 408 Pa. 397, 184 A. 2d 266 (1962), it is my view that *Price v. Philadelphia Parking Authority*, 422 Pa. 317, 221 A. 2d 138 (1966) for all intents and purposes has overruled *White*, supra.

Perhaps the position taken by the majority of this Court in *Price*, supra, represents the more practical approach to the problem presented in both *White*, supra, and *Price*, supra. The need to subject the actions of authorities to judicial scrutiny has become vital and to deny such judicial scrutiny when requested by taxpayers is not in the public interest.

---

Dissenting Opinion by Mr. Justice Cohen:

This Court in its zeal to disregard and overrule a long existing and well established rule of standing has, in my opinion, committed additional error in ignoring universally accepted concepts of mootness. The majority state that even assuming the correctness of appellee's averment that all of the work contracted for had been completed and the contract wholly performed,

this appeal would not be moot. That statement is patently incorrect. If the averment is true, neither the court below nor this Court can render a judgment which will in any way affect the rights of any of the parties. Any judgment rendered would be merely an opinion on an academic question and would be fruitless. 9 Standard Pennsylvania Practice §135. Accordingly, under the accepted rule that when no judgment rendered can be carried into effect, a cause is moot and should not be considered on appeal (See Words and Phrases, "Moot Question" for universality of this rule), we held in *Smith v. Zoning Board of Adjustment*, 407 Pa. 122, 179 A. 2d 192 (1962) that where an appeal is taken from an order refusing to restrain the completion of a building and to grant a supersedeas, and the building is completed prior to the hearing of the appeal, the appeal from the order refusing the supersedeas is moot and will be dismissed.

The majority opinion states that appellant's allegation that she was without sufficient knowledge or information to form a belief as to the truth of appellee's averment that the work had been completed amounts to a denial and demand for proof thereof. I cannot agree. Rule of Civil Procedure 1029(c) provides: "(c) An averment shall be deemed to be denied if proof thereof is demanded and the pleader states either (1) that after reasonable investigation he is without knowledge or information sufficient to form a belief as to the truth of the averment, or (2) that he is without such knowledge or information because the means of proof are within the exclusive control of an adverse party or hostile person. The pleader shall not be required to state what investigation he had made or to rely upon information received from an adverse party or hostile person." Appellant alleges that all means of proof of appellee's allegation are within the exclusive control of appellee. That is not correct, simply because all of the

facts required for proof are matters of public record. Under such circumstances, an answer under Rule 1029(c) is inadequate because it is inherently incredible. Goodrich-Amram, Pennsylvania Rules Service, §1029(c)-1 (Supp. 1965).

The majority opinion points out that Rule 41 requires appellee to take depositions after the filing of a motion to dismiss when the allegations are contraverted. I have already indicated that the allegations herein involved have not been contraverted, but assuming that they are, the majority should have remanded this matter to the court below with instructions that depositions be ordered for the purpose of determining whether or not appellee's averments are correct. If they are, the cause is moot and should be dismissed.

The majority further speak about "some other relief in the nature of restitution of moneys to the Housing Authority" which may be available to appellant. If such relief should take the form of an action to surcharge the individual members of the Housing Authority, nothing may be done toward that end in the instant action because those individuals are not named as defendants herein. Indeed, the majority opinion recognizes the weakness of its "some other relief" contention by studiously refraining from indicating what other relief could be granted. Worse than its vague approach toward that question is the majority opinion's establishment of the proposition that a case can never be moot so long as the plaintiff has made a general prayer for " 'such other and further relief as may be deemed just and reasonable,' " which is a stock prayer in every practitioner's equity form file.

Finally, I disagree with the majority's conclusion as to the issue of a taxpayer's standing to maintain an action in equity against the Housing Authority—an issue which the majority label as the sole issue presented herein, but one which I contend need never be reached.

The majority opinion overrules *White v. Philadelphia,* 408 Pa. 397, 184 A. 2d 266 (1962), which held that a taxpayer has no standing to enjoin the actions of the Philadelphia Housing Authority. In my opinion *White* is good law and should not be overruled. The legislature has seen fit to leave in the hands of the Attorney General the responsibility of implementing the safeguards by which the citizens of Pennsylvania may protect themselves against any improprieties on the part of the Housing Authority. Compare *Sherman v. Yiddisher Kultur Farband,* 375 Pa. 108, 99 A. 2d 868 (1953); *Wiegand v. The Barnes Foundation,* 374 Pa. 149, 97 A. 2d 81 (1953). As I review this matter, it becomes obvious to me that the majority have disregarded the concept of mootness solely in order to indulge themselves in the forbidden luxury of second guessing the General Assembly and superimposing their judgment for the will of that body.

I dissent.

Mr. Justice EAGEN joins in this dissenting opinion.