## Keystone Building Corporation *v.* Lincoln Savings and Loan Association, Appellant.

Argued March 20, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Milton W. Lamproplos,* with him *John R. Smith,* and *Eckert, Seamans & Cherin,* for appellant.

*Frank J. Gaffney,* with him *Thorp, Reed & Armstrong,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, July 2, 1970:

The Keystone Building Corporation, the Lincoln Savings and Loan Association, and the Manufacturers Life Insurance Company of Canada entered into a construction loan agreement on October 7, 1968. Under the terms of the agreement Lincoln agreed to lend Keystone the funds necessary to finance Keystone's construction of an apartment complex and Manufacturers agreed to be the permanent mortgagee for the project.

In May of 1969, approximately two months after construction had begun, a dispute arose between Lin-

coln and Keystone over the terms and conditions under which Lincoln was obligated to advance the necessary funds. Essentially, the dispute revolved around the nature and sufficiency of the proofs of expenditure which Keystone was required to present to Lincoln as precondition for payment. After protracted negotiations, Keystone commenced a suit in equity on July 3, 1969, asking that Lincoln be compelled to advance the requisitioned loan proceeds and that money damages be assessed against Lincoln for its asserted breach of contract.

A hearing was held and, on July 18, 1969, the court decreed that Keystone had to support its present and future requisitions for loan proceeds in a specified manner and that Lincoln had to promptly pay the amounts thus requisitioned. Unfortunately, Lincoln and Keystone could not agree on the meaning of the decree, and the dispute continued unabated. On August 5, Keystone petitioned for and was granted a rule to show cause why Lincoln should not be held in contempt for allegedly not complying with the July 18 decree. A lengthy hearing was held and, on October 6, the court decreed that although Lincoln had not been in contempt, it was obligated to pay Keystone the aggregate of its claim since the dispute arose, $116,286.27, and to advance all sums properly requisitioned thereafter.

The controversy continued, however, and on October 10, Keystone again petitioned for and was granted a rule to cause why Lincoln should not be held in contempt. Lincoln filed a motion to dismiss this second rule on the grounds of prematurity, but the motion was dismissed. Thereafter, on October 16, Lincoln appealed the decrees of July 18, October 6 and October 15 to this Court.

On December 8, 1969, Keystone contacted Lincoln and informed them that the permanent mortgagee,

Manufacturers, was prepared to exercise its option to purchase from Lincoln, for a sum equal to the amounts already disbursed by Lincoln and the accrued interest thereon, the Keystone mortgage note and mortgage. Lincoln promptly complied with this request and transferred to Manufacturers, for the agreed consideration, the mortgage note and mortgage given it by Keystone to secure the construction loan. Lincoln, the appellant in this action, now urges that this assignment mooted the issue on this appeal and requires us to dismiss the appeal and the equity action below. We disagree.

While it is apparent that one of the central issues in this case, the propriety of ordering Lincoln to disburse certain sums in accordance with the construction loan agreement, is now moot, it does not follow that the case ought to be dismissed altogether. A contention similar to Lincoln's was rejected in *Faden v. Philadelphia Housing Authority*, 424 Pa. 273, 227 A. 2d 619 (1967), where we remanded the case for further consistent proceedings after concluding that, even if the primary relief requested by the plaintiff in the equity action was no longer appropriate because of a mootness problem, "it may be that appellant is still entitled to restrain the Housing Authority from making some part or all payment to the appellee-contractor, [citations omitted] . . . or if payment has been made, that some other relief in the nature of restitution of monies to the Housing Authority may be available to appellant. . . . [A]bsent any argument by appellant [appellee?] showing why such further relief is not available, this Court cannot say that completion of performance renders this case moot." 424 Pa. at 277, 227 A. 2d at 621. See also *Youngstown Industrial and Development Corporation v. Hillcrest Shopping Center*, 411 Pa. 611, 192 A. 2d 227 (1963) ; *Ridley Park Shopping v. Sun Ray Drug Co.*, 407 Pa. 230, 180 A. 2d 1 (1962).

In the instant case, Keystone's prayer for relief requested, in addition to various orders of payment, "damages sustained by it in securing interim financing required by it as a result of defendant's default," and "such other relief as the Court deems appropriate under the circumstances and as equity and justice require." Now the equity trial court certainly could have granted any of these requests had the action proceeded without this appeal. *Faden v. Philadelphia Housing Authority,* 424 Pa. 273, 227 A. 2d 619 (1967) ; *Meth v. Meth,* 360 Pa. 623, 62 A. 2d 848 (1949) ; *Lafean v. American Caramel Company,* 271 Pa. 276, 114 Atl. 622 (1921) ; *Head v. Meloney,* 111 Pa. 99, 2 Atl. 195 (1886). And we are hardly willing to say that Lincoln, by first taking these appeals and then requesting that they be dismissed as moot, can reduce the equity court's range of alternative dispositions. The action was properly in equity when first brought, and since there is still the possibility that that court could grant Keystone some sort of relief, the question whether further relief should be granted is initially for the trial court to decide. Accordingly we dismiss this appeal and remand the case for further consistent proceedings.